# ORIGINAL

FILED
HARRISBURG, PA

NOV 14 2001

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD ACKERMAN
    Petitioner

    vs.

JOHN MCCULLOUGH
    Respondent

    :
    :
    :
    : CIVIL NO. 1:CV-01-1048
    :
    : (Judge Caldwell)
    :

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S

### WRIT OF HABEAS CORPUS

Initially Petitioner avers that the Respondent has not acted on the Court's ORDERS of August 23 and October 23, 2001, requiring it to supply a procedural history or the case. The Respondent has also not addressed any of the substantive issues in Petitioner's Habeas Corpus Petition.

Third, Respondent has not addressed Petitioner's motion of October 11, 2001. In this motion Petitioner supplied the Court and the Respondent with copies of inmate cash slips showing the petition had been mailed on May 29, 2001. In accord with Fed.R.Appellate.P 4(a)(1) and Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1987) an incarcerated individual completes service to the Court on the day he places an item in the prison mailbox. This is because he has no control over what happens after that point. The instant petition was not mailed until June 7, 2001, ten (10) days after prison personnel received it. (See motion of October 11, 2001 and attached inmate cash slips).

Petitioner raises five (5) constitutional violations in the Writ. These ruling of the trial court are contrary to the established precedent of the Supreme Court. Two (2) of these

issues, the declaration of a mistrial without manifest necessity and the retrial of petitioner after a conviction, are related to the Double Jeopardy Clause. In the interest of brevity these issues are handled together.

Two (2) of the other issues raised by the petitioner concern the trial court allowing the police to testify to an alleged statement of which the police had no record and did not provide the statements to the defense. These issues are framed in terms of ineffective assistance of counsel and a violation of discovery rules. Since these issues overlap they will be handled together.

The fifth issue concerns the lack of testing by the Commonwealth of DNA evidence. In 1995 the Commonwealth possessed the technology to test forensic samples for DNA. The Commonwealth did not perform and DNA testing on forensic evidence.

Petitioner would also bring the reasoning in <u>Kyles v. Whitley</u>, 514 U.S. 419, 115 S.Ct. 1555, 1576, 131 L.Ed.2d (1995) to the Court's attention. In a concurring opinion Justice Stevens wrote that because the jury was unable to reach a verdict in the first trial the case merits "favored treatment" on review. This is because the prosecution's case was weak and they were unable to gain a conviction in the first trial. Any errors in the trials would have a greater probability in tipping the scales against the defense. This is analogous to the instant case.

## DOUBLE JEOPARDY

Petitioner raises two violations of the Fifth Amendment protections against Double Jeopardy. The first error constituted the trial court's declaration of a mistrial three and a half $(3\frac{1}{2})$ hours after sending out the jury. The second error was caused by the retrial of the Petitioner on greater included offenses after he had previously been convicted of a lesser included offense.

The Fifth Amendment to the Constitution provides that "Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. 5. "Significantly, the language of the Double Jeopardy Clause protects against more than the actual imposition of two punishments for the same offense; by its terms, it protects a criminal defendant from being twice put in jeopardy for such punishment." Witte v. U.S., 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

In the Petitioner's first trial the trial court sua sponte declared a mistrial on several charges after a brief deliberation by the jury and without the consent of the defendant. At the same time the judge accepted the verdict of the jury on two lesser included offenses. Petitioner was then retried and found guilty on the greater offenses. Petitioner will show that there was no manifest necessity to declare a mistrial and that the conviction of the lesser offenses barred subsequent prosecution on the greater offenses. Therefore any retrial violated the Fifth Amendment prohibitions against successive prosecutions

and multiple punishments.

In declaring a mistrial after a brief deliberation the court did not consider the danger of successive prosecutions "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity...." Green v. U.S., 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).

The Supreme Court has continued this reasoning and declared that the defendant has a right to "retain primary control of the course to be followed at trial." U.S. v. Dinitz, 424, U.S. 600, 609, 96 S.Ct. 1077, 47 L.Ed.2d 276 (1976). The Court has also said the Defendant has an important interest in "concluding his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." U.S. v. Jorn, 400, U.S. 470, 486, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

"[I]t has also been said that the central objective of the prohibition against successive trials is the barrier to affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. Implicit in this is the thought that if the government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own." U.S. v. DiFrancesco, 449 U.S. 117, 128, 101 S.Ct.

In Petitioner's first trial the jury left the courtroom at 12:05 p.m. The jury returned to the courtroom and effectively ended deliberation at 3:40 p.m. the same afternoon. During this time the jury ate lunch and selected a foreman. Providing the minimum time of one hour to accomplish these tasks the jury deliberated no more than two and one half ($2\frac{1}{2}$) hours prior to the court declaring a mistrial.

Although there is no mechanical formula to determine the time period a jury should deliberate prior to declaring a deadlock, the Court should consider the time and the number of charges involved in a case. The jury considered a total of 10 charges, including several felonies. When dividing the deliberation time by the number of charges, the jury considered each count of the indictment for roughly 15 minutes. By declaring a mistrial at such an early point in the deliberations the court placed the emphasis on expedience, not on justice.

The Commonwealth has also argued that the simplicity of the trial allows such a brief period of deliberation. This argument is without merit. This was not a case of a single count indictment. The defendant faced ten (10) charges. In no way can this can called a simple case. If the defendant had been convicted of all charges he faced the possible penalty of up to 40 years in prison. To claim that such a case is simple denigrates the seriousness of the accusation and the solemness of the justice system.

To expect twelve people of good conscience to agree on serious matters in such a brief period of time emphasizes

-6-

expedience instead of the constitutional protections stated above. A sophrosyne jury trying to agree on the weather would be hard pressed to have an unanimous outcome in such a brief period. One member would think it too hot, one too cold and the third would think it just right.

"When it comes to decisions squarely implicating the serious consequences of the Double Jeopardy Clause, the necessity for collected and composed contemplation assumes a fortiori proportions." Love, supra 112 F.3d at 137

The trial judge had numerous alternatives to the declaration of a mistrial. It was only 4:00 p.m. and the jury had barely begun deliberating. The judge could have given a dinner break, he could have sent them back to deliberate or even recessed them overnight. It is not as if the jury had already been deliberating for a week, this was the first afternoon of deliberation. We do not know if he considered any of the above stated options because of his peremptory declaration of a mistrial.

Although the trial court is granted the discretion to declare a mistrial, "the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." Sanders v. Easley, 230 F.3d 679, 685, (4th Cir. 2000). Petitioner argues that there were no urgent cicumstances and that the court failed to use the "collected and composed contmepation" required for such a serious decision.

Considering the cautions in Love and Sanders it is clear that the trial court abused its discretion in the early

declaration of a mistrial.

RETRIAL AFTER JEOPARDY ON LESSER INCLUDED OFFENSE

"The test for determining whether there are two offenses is whether each of the statutory provisions requires proof of a fact which the other does not." Blockburger v. U.S., 284 U.S. 299, 344 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The Supreme Court "has often concluded that two statutes define the 'same offense' where one is a lesser included offense of the other." Rutledge v. U.S., 517 U.S. 292, 293, 116 S.Ct. 1241, 1243, 134 L.Ed.2d 419 (1996).

The Supreme Court has also said that "for purposes of applying the Blockburger test.... punishment must be the equivalent of a criminal conviction and not simply the imposition of sentence." Ball v U.S., 470 U.S. 861, 864, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740 (1985), citing Ex parte Lange, 18 Wall 163, 173, 21 L.Ed. 872 (1874). Therefore, both successive punishment and successive prosecution are impermissible. see U.S. v Dixon, 509 U.S. 688, , 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993).

In the case at bar Petitioner was retried on greater offenses after having previously been convicted of a lesser offense. The trial court concluded that the defendant would have to have been acquitted of the greater charges to have jeopardy attach. (Trial Court Op. 6/22/94 p. 13). This is in direct contradiction with Supreme Court precedent. The jeopardy on all greater charges attached at the time the court accepted a verdict and conviction on the lesser included offenses.

The case law in Pennsylvania states that indecent assault is a lesser included offense of aggravated indecent assault, rape and involuntary deviate sexual intercourse. see Commonwealth v. Richardson, 232 Pa. Super. 123, 334 A.2d 700 (1981); and Commonwealth v. Brown, 290 Pa. Super. 448 , 434 A.2d 838 (1981). Simple assault is a lesser included offense of rape Commonwealth v. Irvin, 260 Pa. Super 122 (1978).

In applying the reasoning of the Supreme Court, jeopardy had attached for the offenses in the second trial by accepting the verdict on the lesser offense. The language in Witte, supra clearly explains this.

In Ball and Rutledge, the Supreme Court concluded that because one offense was a lesser included of the other, "one of petitioner's convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense and must be vacated." Rutledge, 517 U.S. at 306, 116 S.Ct. at 1250, 1251. This language has increased meaning in the instant case because the convictions came in separate proceedings.

An additional problem with allowing this approach is that it denies the defendant a lesser included offense instruction in a second trial. Because the lesser charges had already been decided the jury was not provided the opportunity of making a compromise verdict. The first jury was also confused by the court allowing to consider charges which the Commonwealth nol prossed in the second trial.

"The very fact that a defendant has been arrested, charged and brought to trial on several charges may suggest to the jury

that he must be guilty of at least one of those crimes. Moreover, where the prosecution's evidence is weak, its ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a compromise verdict. The submission of two charges rather one gives the prosecution the advantage of offering the jury a choice-- a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than continue to deliberate as to his innocence." Ball, supra 105 S.Ct. at 1675

This case exemplifies the protections intended by the Double Jeopardy Clause. The Commonwealth has presented its evidence and the jury returned a verdict. There was no manifest necessity for a mistrial. The precept of double jeopardy absolutely barred the second trial.

## STATEMENT OF PETITIONER TO THE POLICE

Petitioner is raising two (2) issues concerning a telephone interview with the police on November 10, 1991. These issues cover discovery and effectiveness of counsel. The police did not provide the notes of the interview to the defense and defense counsel did not attempt to obtain the statement. The police testified to what they claim was a statement of the petitioner. According to the testimony of the arresting officer he no longer has the notes. Petitioner avers that the police version is not an accurate representation of the interview.

In petitioner's second trial the officer's testimony indicates he wrote contemporaneous notes of the interview, but he no longer has the notes. After being asked if he took notes during the interview the police officer testified:

"I remember, I recall writing that down. It was probably on a legal pad on my desk at the time..."
(N.T. 9/12/95 p. 330).

In spite of this testimony the Superior Court has stated that "there is no specific evidence the notes existed." (Opinion 10/15/99 pp. 3,4). This is a clear misreading of the transcript. The notes obviously existed at one time. The question is whether the government fulfilled its obligation to turn them over under Brady. The answer is clearly, no.

Petitioner did make a statement to the police. His statement was to the effect of "I did not rape her." The police then asked if I meant the sex was consensual. Petitioner's reply was "I didn't have sex with her" (N.T. 5/22/98 pp. 27,28).

If the statement had been used the first jury may have acquitted the defendant. Absent this testimony in the second trial the jury may not have found enough to convict. Regardless the statement is exculpatory and should have been turned over to the defense. Petitioner informed defense counsel he made the statement and counsel never tried to obtain the statement.

Petitioner asks the Court to consider the likelihood of a layman "spontaneously blurting out" the phrase "It was consensual." This is what the police allege. If this is true, they should be more than happy to turn over the statement.

## DISCOVERY

The failure of the Commonwealth to provide the notes violated the Due Process and Equal Protection rights of the Petitioner. These rights derive from <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 315 (1963) and subsequent cases, and the Pennsylvania Rules of Criminal Procedure.

The Commonwealth was required to provide the defense with the statement in accord with Pa.R.Crim.P. 305 (now Rule 573) The rules states that the Commonwealth has a mandatory duty to provide the defense with:

(B)(1)(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made... Pa.R.Crim.P. 305(B)(1)(b)

Rule 305 also requires the Commonwealth to provide any exculpatory evidence to the defense. Pa.R.Crim.P. 305(B)(1)(a)

In <u>Brady</u> the Supreme Court ruled that "suppression by the

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. at 1196, 97.

"Impeachment evidence .... as well as exculpatory evidence, falls within the Brady rule. U.S. v. Bagley, 473 U.S. 667, 676 105 S.Ct. at 3380, 87 L.Ed.2d. 481 (1985).

The trial court has deemed the statement to be inculpatory based on what the police say was in the statement. Petitioner avers that the statement was exculpatory and would have been used to impeach the police testimony. In either instance the Commonwealth has an affirmative duty to provide the statement to the defense.

In Bagley, the Supreme Court stated that favorable evidence is material, and constitutional error results when it is suppressed by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id, 473 U.S. at 682, 105 S.Ct. 3383. The results of this case should be considered doubtful because of the hung jury.

"Bagley's touchstone of materiality is a 'reasonable probability' of a different outcome....The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 115 S.Ct. at 1566.

It is odd that the police have provided the interview sheets from all witnesses in the case except the defendant. Can a defendant receive a fair trial when the police do not provide a copy of the statement he gave to the police, even after the testimony has ben used at trial. As stated above a fair trial is the goal, not a different outcome. Petitioner again points out the hung jury and the significance of this testimony.

The Third Circuit has stated that rough notes often may constitute Brady material. <u>U.S. V. Ramos</u> 27 F.3d 65 (3d Cir. 1994). Pennsylvania law also requires the prosecution to provide the notes of verbatim statements. <u>Com. v. Contakos</u>, 424 A.2d 1284 at 1287, 1288. Assuming the police followed good procedure and made contemporaneous notes they should have been provided to the defense as required under <u>Brady</u> and Pa.R.Crim.P. 305. If they did not write down the statement it does not meet the requisite "indicia of reliability" to be used.

The Commonwealth has previously argued that the because the police have the notes and not the prosecutor they are not required to provide them and there is no violation. This argument is without merit. First, the arresting police officer was a detective for the District Attorney's office at the time of petitioner's first trial. Second, the prosecution has a duty to discover any favorable evidence from anyone acting on the government's behalf and disclose it to the defense. see <u>Kyles</u>, <u>supra</u> 115 S.Ct. at 1567. Third, the Commonwealth asked direct questions about the interview, it can therefore be assumed that the prosecutor knew of the statement and intended

-14-

to introduce it at trial.

The Third Circuit has previously decided that <u>Brady</u> violations fall within the scope of 28 U.S.C. §2254. See <u>U.S. v. Biberfeld</u>, 957 F.2d 98, 103 (3d Cir. 1992). "Whether an error reaches the magnitude of a constitutional violation is an issue of law, subject to plenary review." Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989). For the foregoing reasons Petitioner asks the Court to review the above issues under this standard.

## EFFECTIVE ASSISTANCE OF COUNSEL

The standard of review in considering an effective assistance of counsel claim is that:

"The defendant must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that undermines confidence in the outcome. <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d.

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have a reasonable doubt respecting guilt." <u>Strickland</u>, <u>supra</u>, 466 U.S. at 695, 104 S.Ct. at 2068-2069. There is not a need to show more than that absent the error a jury would have not reached the standard to convict beyond a reasonable doubt. The Petitioner emphasizes the hung jury in this case. The members of the first jury had reasonable doubt, even with the error. Therefore any errors in this case

bear close examination.

In the case at bar the trial court based its judgment on a preponderance of the evidence standard. (P.C.R.A. court opinion, 9/1/98 pp. 3,4). This is an incorrect standard and much higher than the 'reasonable probability of a different outcome' required by <u>Strickland</u>.

In <u>Williams v. Taylor</u> 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) the Supreme Court addressed the use of this incorrect standard in determining an effective assistance claim. "A state court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." <u>Id</u>, 120 S.Ct. at 1519. The Court then uses the preponderance of the evidence standard as an example of an incorrect application of law in an effective assistance of counsel claim. Because this standard is "contrary to" precedent, this Honorable Court is not barred from granting Habeas Corpus relief on this claim and this Honorable Court should perform a plenary and de novo review of the issue

The facts surrounding this issue are the same as those addressed above. Petitioner has framed the issue in both respects because the relevant law fits the case.

Petitioner informed counsel of the statement he made to the police. Defense counsel had a duty to do an investigation into the claims of the petitioner. When counsel discovered the police were unable to obtain the statement he should have made a motion to suppress any testimony coming therefrom. This

is because the statement did not meet the level of trustworthiness required to meet an exception to the hearsay rule.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c)

Under Pennsylvania law an admission is an exception to the hearsay rule (Pa.R.E. 803 (25)) and is therefore admissible as evidence at trial if it is reliable. The reliability of the testimony is the heart of the issue. Because counsel never made an attempt to obtain the statement the reliability of the testimony could not be tested. Also as stated above petitioner has testified to a different statement than the police.

When cross examined the officer was unable to recall the remainder of the interview except in the most general terms. This interview lasted for at least five minutes and the extent of the testimony amounted to one word. Without the statement there is no possible way defense counsel could perform a proper cross examination as to the veracity and reliability of the witness's memory.

Initially the trial court declared the statement an excited utterance. Petitioner raised this issue in his pro-se post conviction petition. After Petitioner showed the statement to be inadmissible as an excited utterance, the Superior Court changed the trial court's ruling and called the alleged statement an admission. Regardless of the exception a hearsay statement must have "indicia of reliability" as stated in <u>Chambers v.</u>

-17-

Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d. 297.
The testimony of the police did not have the "indicia of
reliability" required by law and should have been excluded
from the trial.

The trial court has also stated the issue is one of
credibility. This would be true if the statement was reliable.
Absent a copy of the statement it is impossible to determine
this reliability.

"The question of credibility sometimes depends on the
slightest inclination of the scale. Where the jury is in doubt
as to whether or not to believe a witness, the smallest feather
of a palpable exaggeration or an inconsistency in a witness's
statement on a minor point may be the very item to tip the scales
and discredit the witness on his main testimony." Com. v.
Grayson, 353 A.2d 428 at 429, 430 (Pa. 1976). This is why the
Pennsylvania Supreme Court decided the notes of a statement
should have been supplied to the defense.

As noted above, Petitioner has not received a fair review
on this issue or the discovery issue. The trial court reviewed
the issue using an incorrect standard. The Pennsylvania Superior
Court also erroneously concluded, regardless of testimony to
the contrary, there was no evidence the notes existed. (Opinion
10/15/99 pp. 3,4).

## POST CONVICTION DNA TESTING

Petitioner initially raised the issue of DNA testing in his pro-se post conviction petition. After appointing counsel the trial court dismissed the issue. Due to the failure of appellate counsel to properly preserve the issue the Pennsylvania Superior Court deemed the issue waived on appeal. The Pennsylvania Supreme Court denied a hearing. Therefore the issue is procedurally defaulted and the Petitioner has no 'state corrective process' in which to raise the issue.

The failure of counsel to properly preserve the issue has prejudiced the Petitioner and denied him the opportunity to prove his innocence. It is clear from the case law that had counsel properly framed and raised the issue that the Petitioner would have been granted the testing.

Pennsylvania has allowed DNA testing since at least 1992. see Commonwealth v. Brison, 421 Pa. Super, 618 A.2d 420 (1992). Petitioner would note that his second trial was not until three (3) years after this decision. In Brison the court stated that the "principles of justice" required the testing to be completed.

"Where the request for forensic tests are made in a post-conviction proceeding, the right to discovery will be implicated where a conviction rests largely on identification evidence and advanced technology could definitely establish the accused's innocence." Commonwealth v. Reese, 444 Pa. Super 38, 663 A.2d 206, 208. (1995).

The emergency room personnel did a Johnson rape kit on the victim at the hospital. There were hairs recovered in the

testing.   The kit was sent to the State Police lab at Bethlehem (Lab Report # B91-4340-C).   The Commonwealth did not perform any forensic testing on the samples.

In the instant case the conviction was based largely on identification evidence.   Under cross examination the victim testified that immediately after the incident she identified her attacker differently than at trial (NT 9/12/95).   There were also discrepancies in the description provided to the police.   Although these differences were minor, the "principles of justice" require that the Petitioner be granted the opportunity to prove his innocence.

In 1999 a Justice Department panel of the "National Commission on the Future of DNA Evidence" which has law enforcement, judicial and scientific members issued a report urging prosecutors to consent to post conviction DNA testing, especially if the results could exonerate the defendant. The Congressional Record, February 1, 2000, p. S199.   All the Petitioner asks for is what is being urged by the panel.

Additionally, Senator Patrick Leahy, now Chairman of the Senate Judiciary Committee is the chief sponsor of the 'Innocence Protection Act' (S.2073)  which would require post conviction DNA testing where it is relevant.   Due to the events of September 11, 2001 this has received a lower priority, but it does not change the need for protections in this area.

Since the Commonwealth has not responded it can be assumed they have no objection to the granting of the tests.

## CONCLUSION

"Even, if in a hypothetical case, the evidence of guilt piles high as Everest on Matterhorn, even if the District Attorney conscientously believes the defendant to be as guilty as Cain, and no matter with what certainty the Judge views the culpability of the accused at the bar, the defendant is still entitled to all the safeguards of a fair trial as announced in the Constitution and the law of the land." Commonwealth v. Edwards, 147 A.2d 313 at 315.

Petitioner asks that this Honorable Court review the case using the utmost care. Petitioner again cites the Third Circuit from Love, in which they said "close cases regarding the propriety of a mistrial should be resolved in favor of the liberty of the citizen." Love, supra , 112 F.3d 137. This was obviously a close case or there would have been no need for a second trial.

WHEREFORE, your Petitioner prays this Honorable Court, after a thorough review of the issues raised in the petition, issues the Writ of Habeas Corpus.

ON THIS DATE: *November 11, 2001*

Respectfully Submitted,

*Edward Ackerman*
Edward Ackerman
CW-5843
P.O. Box 1000
Houtzdale, PA 16698

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD ACKERMAN         :
    Petitioner        :
                :
    vs.              : CIVIL NO. 1:CV-01-1048
                :
JOHN MCCULLOUGH         : (Judge Caldwell)
    Respondent        :

## CERTIFICATE OF SERVICE

I hereby certify that I am serving a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S WRIT OF HABEAS CORPUS on the person(s) listed and in the manner indicated below.

Service by first class mail prepaid from Houtzdale, PA 16698

Office of the District Attroney
401 N. Second St.
Schuylkill County Courthouse
Pottsville, PA 17901

ON THIS DATE: _Nov. 11, 2001_

_Edward Ackerman_
Edward Ackerman
CW-5843
P.O. Box 1000
Houtzdale, PA 16698

November 11, 2001
Edward Ackerman
CW-5843
P.O. Box 1000
Houtzdale, PA 16698

Clerk of Courts
United States District Court
Middle District of Pennsylvania
228 Walnut Street
Harrisburg, PA 17108

Re:   Ackerman v. McCullough
      Civil No. 1:CV-01-1048
      (Judge Caldwell)

Dear Sir or Madam:

     Enclosed please find one (1) original and two (2) copies
of a MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S HABEAS CORPUS
PETITION.  Please docket these  for the above listed case.

     Thank you for your time in this matter.

                              Sincerely yours,

                              Edward Ackerman

                              Edward Ackerman




enclosures
c:  Schuylkill Cty D.A.