UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD ACKERMAN,                    :
                                    :
            Petitioner              :
                                    :    CIVIL NO. 1:CV-01-1048
        v.                          :
                                    :    (Judge Caldwell)
JOHN McCULLOUGH,                    :
                                    :
            Respondent              :



M E M O R A N D U M

I.    Introduction.

        Edward Ackerman, an inmate at SCI-Houtzdale, Pennsylvania,

filed this pro se petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.   Ackerman is challenging his Pennsylvania state

court convictions for rape, involuntary deviate sexual intercourse,

aggravated indecent assault, indecent assault, simple assault and

terroristic threats.   He was tried twice when the first jury hung

on some of the charges.   His aggregate sentence is four and one-

half to thirteen years.

        The petition raises five claims.   The first two claims are

based on double jeopardy.   Ackerman argues that the Double Jeopardy

Clause prohibited the second trial because there was no manifest

necessity to declare a mistrial in the first one.   Ackerman also

argues that the Double Jeopardy Clause prohibited his retrial on

the greater offense of rape after he was convicted of the lesser-

included offense of indecent assault in the first trial.  Included
in this claim is an argument that the Commonwealth deliberately
delayed his sentencing on his convictions in the first trial for
more than three years.

Ackerman's third and fourth claims are based on his belief
that a Pennsylvania State trooper recorded a statement he had made
that was not turned over to the defense.  In the third claim, he
asserts that his trial counsel was ineffective in not obtaining a
copy of this statement and in the fourth claim that the
Commonwealth violated its obligation to produce exculpatory
evidence by not turning over a copy of the statement.

Finally, Ackerman's fifth claim is that the Commonwealth
should have conducted DNA tests of hair from the rape kit because
the identity of the victim's attacker was at issue in the trial.

For the reasons set forth below, we will deny the petition.


II.  Background.

The evidence at trial established the following.  The victim
had spent the evening dancing at the Valley View Hotel in the
Village of Nuremberg.  She had observed Petitioner there drinking.
The victim testified that while she walking home in the early
morning of November 10, 1991, Ackerman grabbed her and dragged her
into a yard.  She managed to escape, but he caught her and again

-2-

dragged her into the yard.  He bit her face and hands.  She escaped again, and he caught her again.  He then dragged her through a field, across a street, and at one point pounded her head on the ground.  He towed her by the hair and one hand into his home and into his bedroom.

The victim was ordered to undress.  Petitioner bit her and pinched her breasts.  He forced his penis into her vagina, anus and mouth.  He pulled clumps of hair from her head and saved one clump in a book.  During the course of the attack, the victim's shoes and glasses were lost in the yard adjacent to Ackerman's home, and the victim lost a pair of simulated pearls in his bedroom.

The victim was treated at the Hazleton State Hospital for various bruises and bite marks to her face, hands, back and breast area.  Samples were taken for processing with a rape kit.  No seminal fluid or semen was found.  Hair samples were taken from the victim, consisting of strands of pulled and cut hair.  At trial, an expert testified that the hair samples matched those taken from the crime scene.

Trooper Francis McAndrews of the Pennsylvania State Police investigated the crime.  Ackerman's mother admitted McAndrews and other officers into Ackerman's bedroom where hair samples and the victim's pearls were found.  Her shoes and glasses were recovered in the yard next to the home.

-3-

McAndrews told Ackerman's mother that he wished to speak to her son.  Later that day, Ackerman telephoned McAndrews.  As McAndrews related their conversation at trial, Petitioner admitted he had had sex with the victim but said that it was consensual.  According to Ackerman at trial, he had not only denied to McAndrews that he had raped the victim but he also denied that any sex had taken place.  McAndrews thinks that he might have taken notes during the conversation but that he had no written statement at the time of trial, if one had ever existed, concerning the telephone conversation with Petitioner.

Petitioner was charged with kidnapping, unlawful restraint, rape, involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, aggravated assault, simple assault, recklessly endangering another person, and terroristic threats.

Ackerman's first trial began on Thursday, November 2, 1992.  At the conclusion of the Commonwealth's case, the court dismissed the charges of unlawful restraint, aggravated assault, and recklessly endangering another person.  The jury began deliberating on Monday, November 2, 1992, at 12:05 p.m.  At 2:03 p.m., they returned to the courtroom, seeking additional instructions.  The jury resumed deliberations at approximately 2:16 p.m.  (Doc. 23, 11/02/92 Trial Transcript, p. 364).  They returned to the courtroom at 3:40 p.m., having difficulty resolving some of the charges and

-4-

indicating that "there is some deadlock," in the words of the trial judge. (Doc. 23, Id., pp. 364-66; Exhibit D, pp. 10-12). The court stressed to the jury the importance of the proceedings and asked them to return to the jury room to discuss whether additional instruction would help them, but that if they did to think they could make any progress, to return to the courtroom. The jury began further deliberations at 3:43 p.m. (Doc. 23, N.T. 365-67).

About twenty minutes later, at 4:05 p.m., they returned to the courtroom. The court asked the foreperson if additional or clarifying instructions would help. She said no. (Doc. 23, N.T. 368). The court then asked if she thought they could reach a unanimous verdict. She said no. (Doc. 23, N.T. 369). Finally, the court asked if there was a factual dispute they could not agree on and she said yes. (Doc. 23, N.T. 369).

The court told the jury to indicate on the verdict slip which charges they had reached a unanimous verdict on, and on which charges they were deadlocked. (Id. at p. 370).

The jury left the courtroom at 4:10 p.m. and returned at 4:12 p.m. with a completed verdict form. They had found Ackerman guilty of indecent assault[1] and simple assault.[2] On the remaining charges, the court asked each juror whether they agreed there was a

_____

[1] 18 Pa. C.S.A. § 3126 (1991).

[2] 18 Pa. C.S.A. § 2701(a)(1)(1991).

-5-

"hopeless deadlock that cannot be solved by further negotiations." (Id. at 372). Each responded affirmatively. Id. The court then declared a mistrial on the remaining charges of kidnapping, rape,[3] involuntary deviate sexual intercourse ("IDSI"),[4] aggravated indecent assault,[5] and terroristic threats.[6]

Ackerman filed post-trial motions raising double jeopardy as a bar to his retrial on the unresolved charges. The trial court denied the motion, explaining that it had found manifest necessity because the testimony had only taken about eight hours, the issues were not complex, and each juror indicated individually that they would not be able to reach a verdict on the remaining charges. (Trial court's opinion, dated June 21, 1994 at pp. 11-12). On interlocutory appeal, the superior court affirmed. In April 1995, the Pennsylvania Supreme Court denied Ackerman's petition for allowance of appeal.

In September 1995, Ackerman had his second trial. He was found guilty of rape, IDSI, aggravated indecent assault, and terroristic threats. On October 31, 1995, he was sentenced to a term of four-to-twelve years for rape, a concurrent term of four-

---

[3] 18 Pa. C.S.A. § 3121 (1991).

[4] 18 Pa. C.S.A. § 3123 (1991).

[5] 18 Pa. C.S.A. § 3125 (1991).

[6] 18 Pa. C.S.A. § 2706 (1991).

-6-

to-twelve years for involuntary deviate sexual intercourse, a concurrent term of one-to-twenty-four months for simple assault, and a consecutive term of six-to-twelve months for terroristic threats.  The remaining convictions merged for sentencing purposes. In October 1996, Petitioner's appeal to the superior court was denied.

Petitioner then sought relief under the Pennsylvania Post Conviction Relief Act (PCRA).  <u>See</u> 42 Pa. C.S. § 9541-9546.  The trial court denied relief, and the superior court affirmed in October 1999.  On June 6, 2000, the state supreme court denied a petition for allowance of appeal.  This 2254 petition followed.

III.  <u>Standard of Review</u>.

Under section 2254, a federal habeas court reviews state criminal convictions for violations of "the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  When a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  <u>See generally</u>, <u>Moore v. Morton</u>, 255 F.3d 95, 104-05 (3d Cir. 2001).

Additionally, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not.  28 U.S.C. § 2254(e)(1).  Further, a petitioner must have exhausted state-court remedies before filing a federal habeas petition.  See 28 U.S.C. § 2254(b)(1)(A).

IV.    Discussion.

    A.    Whether the Trial Judge Properly Declared
          a Mistrial on the Basis of Manifest
          Necessity.

Ackerman argues that the trial judge's declaration of a mistrial at the end of the first trial was without manifest necessity and precluded his retrial on the remaining charges as a violation of the Double Jeopardy Clause.

Mistrials may be declared absent the defendant's consent "when, 'taking all the circumstances into consideration, there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated.'"  Love v. Morton, 112 F.3d 131, 133 (3d Cir. 1997) (internal citations omitted).  "To demonstrate manifest necessity, the state must show that under the circumstances the trial judge 'had no alternative to the declaration of a mistrial.'"  Id. at 137.  Reviewing courts must afford considerable deference to the trial court's determination

-8-

that manifest necessity warranted a mistrial. <u>Arizona v.
Washington</u>, 434 U.S. 497, 511, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).
However, the courts cannot condone a trial judge who acted
"irrationally or irresponsibly" in declaring a mistrial, <u>id</u>. 434
U.S. at 514, and a state court's failure to exercise "sound
discretion" in declaring a mistrial may be grounds for federal
habeas relief under 28 U.S.C. § 2254(d).  If manifest necessity
existed to declare a mistrial, the general rule that a "retrial
following a 'hung jury' does not violate the Double Jeopardy
Clause" will apply.  <u>United States v. Keene</u>, 287 F.3d 229, 233 (1st
Cir. 2002), *citing*, <u>Richardson v. United States</u>, 468 U.S. 317, 324
(1984).

In this case, Ackerman believes that <u>Love</u>'s "no alternative"
language essentially means that if there is any alternative, it has
to be attempted; as Petitioner puts it, "[t]he defense need only
show the trial court had viable alternatives to the declaration of
a mistrial."  (Doc. 15, p. 5).  He also relies on <u>Sanders v.
Easley</u>, 230 F. 3d 679, 685 (4th Cir. 2000), where the court stated
that the declaration of a mistrial is a judicial power "to be used
with the greatest caution, under urgent circumstances, and for very
plain and obvious reasons."  Petitioner advances the following
alternatives to the mistrial: (1) the jury could have deliberated
longer that evening; or (2) the jury could have returned the next

-9-

day and continued deliberations.  He also points out that they only

had one day of deliberations and only deliberated about three to

four hours that day, indicating that they had not deliberated for

very long on each charge.

To begin with, the trial court is not obligated to explore all

As a federal habeas court, we only reverse state-court rulings

if they are contrary to, or are an unreasonable application of,

federal law.  The state courts' decision on this double jeopardy

issue was reasonable under federal law.

To begin with, the trial court is not obligated to explore all

options.  Rather, the availability of options is only one factor to

be considered.  See Crawford v. Fenton, 646 F.2d 810, 818 (3d Cir.

1981).  Second, that only a few hours were spent in deliberations

also did not militate against a mistrial.  See United States v.

Brahm, 459 F.2d 546, 550 (3d Cir. 1972)(five hours of deliberation

were sufficient); United States v. Feijoo-Tomala, 747 F. Supp. 181,

185 (E.D.N.Y. 1990)(collecting cases).  Additionally, the court

asked the jury to continue deliberations after they initially

revealed their deadlock.  Further, only after the jury returned a

second time, still unresolved, and after the forewoman represented

that no further clarification of the charges or negotiations would

assist them in breaking their deadlock, did the trial judge declare

a mistrial.  See Feijoo-Tomala, supra, 747 F. Supp. at 185 ("the

jury's own statement that it is unable to reach a verdict is the

-10-

most crucial factor"). Moreover, upon their return, the trial

judge polled each juror as to whether they were deadlocked on the

remaining charges. In these circumstances, the trial judge did not

violate the Double Jeopardy Clause by declaring a mistrial.[7]

> B.   Whether Ackerman's Retrial on the Rape Charge
>      After His Conviction for Indecent Assault
>      Violated Double Jeopardy.

Ackerman argues that the Double Jeopardy Clause barred further

prosecution of the rape charge after his conviction on indecent

assault in the first trial. He relies on precedent applying the

rule established in Blockburger v. United States, 284 U.S. 299, 52

S.Ct. 180, 76 L.Ed. 306 (1932), that typically results in barring a

trial either on the greater offense or a lesser-included one if the

defendant has already been tried on either one of them. See

Rutledge v. United States, 517 U.S. 292, 116 S.Ct. 1241, 134

L.Ed.2d 419 (1996). He notes that the Pennsylvania Superior Court

has construed indecent assault to be a lesser-included offense of

rape, citing Commonwealth v. Richardson, 232 Pa. Super. 123, 334

A.2d 700 (1975).[8]

---

[7]United States v. Crosley, 634 F. Supp. 28, 32 (E.D. Pa. 1985),
lists the factors to be considered in considering a mistrial.

[8] In material part, 18 Pa.C.S. § 3126 (1991) provided at the
time of Petitioner's crimes that indecent assault is "indecent
contact with another not his spouse" "without the consent of the
other person." In material part, rape was defined as "sexual
intercourse with another person not his spouse" "by forcible

Ackerman's general statement of the law is correct, but it ignores an important qualification of federal double jeopardy law. The Supreme Court recognizes that states may judicially interpret state-law crimes to create separate offenses depending upon the factual circumstances. See Brown v. Ohio, 432 U.S. 161, 169 and n.8, 97 S.Ct. 2221, 2220 and n.8, 53 L.Ed.2d 187, 196 and n.8 (1977). In Brown, the Court stated that there would have been no double jeopardy claim in that case (although perhaps a due process one) if the Ohio courts had construed the joyriding statute (one of the statutes at issue there) as creating a separate offense for each day the auto was operated without the owner's consent, thereby allowing Ohio to punish a defendant for both car theft and joyriding for a criminal episode occurring over several weeks. However, in the absence of such a judicial interpretation, a prosecutor could not avoid the bar of double jeopardy "by the simple expedient of dividing a single crime into a series of temporal and spatial units." Id. at 169, 97 S.Ct. at 2227, 53 L.Ed.2d at 196.

Looking to relevant Pennsylvania law, we note that the Pennsylvania Supreme Court permits convictions on separate crimes when there are facts in evidence beyond that which is necessary to

---

compulsion" or "by threat of forcible compulsion . . . " 18 Pa.C.S.A. § 3121(a)(1) and (2)(1991).

-12-

establish the one offense and which support a conviction on the

other.   See Commonwealth v. Belsar, 544 Pa. 346, 350-51, 676 A.2d

632, 634 (1996)(quoting Commonwealth v. Weakland, 521 Pa. 353, 364,

555 A.2d 1228, 1233 (1989)).   In Belsar, the state supreme court

held that an aggravated assault committed by kicking the victim

shortly after the defendant committed attempted murder by shooting

the victim was a separate crime punishable with its own sentence

because "the kicking attack was a separate incident that exceeded

that which was necessary to accomplish the attempted murder."   544

Pa. at 351, 676 A.2d at 634.

      This rule defeats Petitioner's double jeopardy claim.   First,

the criminal complaint charged Ackerman with indecent assault based

on facts other than sexual intercourse with her.   The complaint

charged him with indecent assault "IN THAT HE DID bite, touch and

feel [the victim's] breast and vagina."   (Doc. 20, Criminal

Complaint).   It charged him with rape after he did "intentionally,

knowingly or recklessly, engage in sexual intercourse with [the

victim], NOT his spouse, by forcible compulsion or by threat of

forcible compulsion . . ."   (Id.).   Second, the touching of the

victim's breasts (pinching as the victim testified) is a fact

beyond those necessary to establish the rape--sexual intercourse by

force or threat of force.   Under these circumstances, Pennsylvania

-13-

would consider Petitioner as having committed two separate offenses.

We note that on similar reasoning the state superior court in _Commonwealth v. Richter_, 450 Pa. Super. 383, 676 A.2d 1232 (1996), distinguished _Richardson_, _supra_, 334 A.2d 700, a case Petitioner cites to support his claim that indecent assault is a lesser-included offense of rape and hence barred by the Double Jeopardy Clause under _Blockburger_, _supra_. In _Richter_, the superior court upheld separate convictions and sentences for indecent assault and rape when the victim's ex-husband fondled her breasts and then forced intercourse upon her. The court reasoned that the act of fondling the victim's breasts was separate from the act of forcible intercourse and hence could sustain a separate conviction because it was not "a necessary ingredient" of the crime of rape. 450 Pa. Super. at 391-92, 676 A.2d at 1236. The court distinguished _Richardson_ by noting that in that case the same act, forcible intercourse, was used to support the convictions for both rape and indecent assault.

Since two separate offenses are involved, Ackerman has no double jeopardy claim arising from a retrial on the rape charge after conviction on the indecent assault charge.

-14-

C.    Delay in Sentencing on Simple-Assault
      and Indecent-Assault Convictions.

As part of his double jeopardy claim, Ackerman argues that the
delay in sentencing him for over three and one half years (November
2, 1992, to October 31, 1995) on the two charges resulting in
convictions in the first trial violated double jeopardy.  Ackerman
has the wrong amendment.  It is the Sixth Amendment right to a
speedy trial that guarantees a prompt sentencing.  See Burkett v.
Cunningham, 826 F.2d 1208, 1220 (3d Cir. 1987).  The court must
balance four factors: (1) the length of the delay; (2) the reason
for the delay; (3) the defendant's assertion of his right; and (4)
the prejudice to the defendant.  Id. at 1220 (quoting Barker v.
Wingo, 407 U.S. 514, 530 (1972)).  Prejudice is the most important
factor.  Burkett, 826 F.2d at 1220.

Weighing these factors, we find no violation of any right to a
speedy sentencing.  First, the reasons for the delay were valid.
Ackerman was pursuing his double jeopardy rights on appeal,
culminating on April 11, 1995, with the Pennsylvania Supreme
Court's denial of Ackerman's petition for allowance of appeal on
that issue.  Also, the trial judge wanted to see which convictions
would merge for sentencing purposes, and this had to await the
outcome of the second trial.  Second, Petitioner has not suffered
any prejudice, nor has he alleged any, as a result of the delay in
sentencing.

-15-

D.    <u>Trial Counsel Was Not Ineffective for</u>
      <u>Failing to Obtain a Copy of Ackerman's</u>
      <u>Statement to Trooper McAndrews Which</u>
      <u>Never Existed and There Was No</u>
      <u>Prosecutorial Misconduct in Withholding</u>
      <u>Such a Statement</u>.

Petitioner's third claim is that trial counsel "failed to obtain a verbatim copy of the alleged statement made by the defendant" to Pennsylvania State Police Trooper Francis V. McAndrews, the criminal investigator assigned to the case who testified at both trials in this matter. (Doc. 1). Specifically, Ackerman is referring to a supposed statement prepared by Tpr. McAndrews reciting Petitioner's remarks during the phone call. If such a statement existed, it would have been relevant to McAndrews' and Petitioner's veracity because McAndrews testified that Ackerman admitted having sex with the victim but that it was consensual. On the other hand, Petitioner testified that he had said that they had not had sex. Petitioner's fourth claim is that the Commonwealth failed to produce this exculpatory statement.

We reject these claims. The state courts examined the factual issue concerning whether McAndrews had prepared a statement based on Petitioner's telephonic remarks. They concluded that no such statement existed, although McAndrews may have made notes that he did not keep. (Doc. 20, trial court PCRA opinion, September 1,

-16-

1998, p. 6 n.2; Superior Court opinion, Oct. 15, 1999, at p. 4).[9]
It follows that counsel could not have been ineffective in not
obtaining the statement and that the Commonwealth could not have
failed to produce exculpatory evidence.[10]

> E.    The Alleged Failure to Test Hair
>       in the Rape Kit For DNA.

Petitioner's final claim is that DNA testing should have been
performed on hair samples taken from the victim at the hospital and
made part of the Johnson rape kit.  He asserts that identification

---

[9]As noted above, we accept state-court factfinding.  See 28
U.S.C. § 2254(e)(1).

[10]At the second trial, McAndrews testified on cross-examination
concerning any writing he may have made in connection with the
phone conversation as follows:

    Q: And did you take notes of your conversation with him?

    A: I may have.

    Q: Do you have any of those notes?

    A: I don't believe so.

(Id. at p. 328).

    McAndrews also admitted that he did "recall writing" down
Ackerman's comment that the sexual contact was consensual.  "It was
probably on a legal pad on my desk at the time."  "I recall writing
our, the facts concerning our conversation down possibly on a legal
pad which was standard procedure for myself at my desk and
incorporating that into the probable cause the following day, the
following morning I should add."  (Id. at pp. 330-331).  However,
McAndrews also stated that he did not keep those notes after
incorporating them into his probable cause affidavit.

was an issue at the trial because of discrepancies in the victim's

testimony in that regard and that testing the hair for DNA would

establish his innocence.

We reject this claim. Petitioner does not identify whose hair

it possibly could be (victim's or assailant's) or why testing it

could exonerate him in light of the other evidence in this case.[11]

The victim had seen Petitioner at the hotel that night, she

testified he attacked her on the street and dragged her into his

home, and her jewelry and clumps of her hair were found in his

bedroom.

We also note that Petitioner has procedurally defaulted this

claim, having failed to make a specific claim for DNA testing in

the state courts.


                                        _____
                                        WILLIAM W. CALDWELL
                                        United States District Judge


Date: August 8, 2002

---

[11]If Petitioner is referring to the victim's hair pulled and
cut for evidence, DNA testing would be immaterial since her
identity is known.

-18-